MALCOLM O. GRANT v. MINNEAPOLIS, ST. PAUL, ROCHES-
TER & DUBUQUE ELECTRIC TRACTION COMPANY.[1]

February 23, 1917.

Nos. 19,890—(40).

**New trial — verdict reduced.**

In this action to recover for personal injuries, it is *held*:

(1) There was no abuse of discretion in not granting a new trial on
the ground of the insufficiency of the evidence to sustain a verdict for
plaintiff.

(2) The amount of the verdict as reduced by the trial court is still
excessive.

(3) There was no prejudicial error in the rulings on the trial or in
the charge.

Action in the district court for Rice county to recover $20,000 for
personal injury received while in the employ of defendant. The case
was tried before Childress, J., who when plaintiff rested denied defend-
ant's motion to dismiss the action and at the close of the testimony
its motion for a directed verdict, and a jury which returned a verdict
for $17,500. Defendant's motion for a new trial was granted on the
ground that the verdict was excessive, unless plaintiff consented to a
reduction of the verdict to $10,000. From that order defendant ap-
pealed. Affirmed, provided plaintiff consented to a reduction of the
verdict to $7,500.

*M. H. Boutelle* and *R. T. Boardman,* for appellant.
*James P. McMahon* and *Moonan & Moonan,* for respondent.

PER CURIAM.

In this action to recover for personal injuries plaintiff received a ver-
dict of $17,500. The trial court on defendant's motion for a new
trial made an order granting the motion unless plaintiff should consent
to a reduction of the verdict to $10,000, in which event the motion was

[1]Reported in 161 N. W. 400.

denied. Plaintiff consented to the reduction, and defendant appeals from the order.

The assignments of error relate to the sufficiency of the evidence to sustain any verdict for plaintiff, the amount of the verdict, and to alleged errors on the trial.

Defendant operated a line of railroad from Randolph to Mankato in this state. Plaintiff was a brakeman on this line, and had been for some seven months before the accident. The train consisted of a combination motor and passenger car in front and a baggage, express and mail car in the rear. When the train arrived at Mankato it was customary to uncouple the motor from the rear car, turn it on a wye, and again couple it to the rear car preparatory to the return trip. This was the operation that was in course of performance at the time of the accident. It was plaintiff's duty, and one he has performed daily since his employment began, to uncouple and couple these cars. When the train stopped on the occasion in question plaintiff descended at the rear of the motor car on the right-hand side facing the front end, and the conductor descended on the left. The conductor released the pin in the automatic couplers, while plaintiff went between the two cars to complete the uncoupling. Plaintiff testified in substance that after he had uncoupled the hose the conductor said "all right" to signify that plaintiff was to signal the motorman to go ahead. Plaintiff stepped from between the cars and gave this signal; just as he did so, he noticed that he had failed to release the safety chains that were attached to the car sills near the couplers. He claims that the car had started in response to his signal, and that he signaled the motorman to stop. The signal was obeyed, and plaintiff again went between the cars to release the chains. Thus far the evidence is hardly in dispute. The operation of releasing the chains required both hands, and while plaintiff was engaged in it standing in a stooping position between the cars, according to his testimony the motor backed and caught him between the sills of the two cars, causing the injuries he complains of. This is plaintiff's version of the accident, the claim being that the motorman negligently backed the car while plaintiff was between the two cars. The conductor and motorman gave a different version, their testimony tending to show that the motor was not backed, but was stopped when it was discovered the chains had

not been released, and that plaintiff was struck by the forward movement of the rear car. While the version of the accident given by defendant's witnesses seems more reasonable than that given by plaintiff, it can hardly be doubted that it was for the jury to decide what the truth was. The testimony of the motorman that he applied the emergency brake is not entirely consistent with the view that the motor car did not back after it was stopped on plaintiff's signal. We have concluded that plaintiff's story is not so improbable, or so opposed by the other evidence and the physical facts, that we are justified in saying that the trial court abused its discretion in denying a new trial. If the jury believed plaintiff, it was justified in finding a verdict in his favor. The negligence was that of the motorman in backing his car when plaintiff was between the two cars. While it may have been negligence on plaintiff's part to overlook the fact that the chains were coupled, this was only a remote cause of the accident. The questions of negligence and contributory negligence must be determined from the acts and omissions of the motorman and plaintiff after the car was stopped on plaintiff's signal and he started to uncouple the chains. We think the issues on which liability depended were for the jury, and that, applying the familiar rules which govern this court in such cases, we cannot say that the verdict is not sufficiently supported by the evidence to prevent our setting it aside.

The original verdict was clearly excessive, and we think this is also true of the verdict as reduced. Plaintiff's injuries were serious, painful and permanent. The clavicle or collar bone is dislocated at the left shoulder, and protrudes upward. The condition cannot be remedied. It causes pain, and renders it impossible for plaintiff to do any lifting or heavy manual labor with his left arm. This is a statement in brief of the effect of plaintiff's evidence and that of the medical witnesses. We do not wish to minimize the extent of plaintiff's suffering or disability, but we think, allowing for all fair differences of opinion, that $7,500 is the outside limit of what can be considered fair compensation to plaintiff for his injuries. The record shows a fair trial, and there is nothing except the amount of the verdict that indicates that the result was reached through passion or prejudice on the part of the jury. We think the

interests of justice will be best served by a reduction of the verdict instead of a new trial.

We have considered the claims of error in rulings on the trial and in the charge, and find nothing that calls for a reversal.

The order appealed from is affirmed on condition that plaintiff, within 10 days after the remittitur goes down, file, in the court below, his consent to a reduction of the verdict to $7,500. If such consent is not filed, the order is reversed and a new trial granted.