## FRANK H. EHRLER v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

June 22, 1917.

Nos. 20,288—(116).

**Negligence — proximate cause.**

1. The evidence was sufficient to warrant the jury in finding that defendant was negligent and that this negligence was the proximate cause of the accident.

**Same — evidence sustains finding.**

2. The evidence justified the jury in finding that the condition of plaintiff at the time of the trial was caused by the accident.

**Excessive damages.**

3. The damages are excessive.

**Rulings on evidence.**

4. There was no reversible error in certain rulings on evidence.

[1] Reported in 163 N. W. 506.

Action in the district court for Ramsey county to recover $35,000 for injuries sustained while in defendant's employ as a locomotive fireman. The answer alleged that all the conditions surrounding the work done by plaintiff were patent and observable and plaintiff understood the risk of being injured in the manner in which it is alleged the accident occurred. The case was tried before Dickson, J., who denied defendant's motion for an instructed verdict in favor of defendant, and a jury which returned a verdict for $15,500. Defendant's motion for judgment notwithstanding the verdict was denied and its motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $12,000. From the order denying its motion, defendant appealed. Affirmed on condition plaintiff consent to a reduction of the verdict to $10,000.

*Barrows, Stewart & Ordway,* for appellant.

*Douglas, Kennedy & Kennedy,* for respondent.

BUNN, J.

Plaintiff recovered a verdict of $15,500 in this personal injury case. Defendant made the usual alternative motion, which the trial court denied, except that it granted a new trial unless plaintiff should consent to a reduction of the verdict to $12,000. Plaintiff filed his consent to this, and defendant appealed from the order denying its motion.

Plaintiff was a fireman in defendant's employ. On the evening of May 13, 1915, he was firing on an engine that was backing up pulling a heavy train through the St. Paul freight yards. At a point where the track passes under the Third street bridge there is a curve of 6 degrees. The floor of the tender of the engine was from 3 to 5 inches higher than the floor of the engine. The space between the tender and the engine is about 10 inches, and is covered with an iron "apron" 7 or 8 feet long, 20 inches wide and 1-8 of an inch thick. This apron is attached to the engine by hinges, but lies loose on the floor of the tender. In shoveling coal plaintiff was compelled to work on this apron. His testimony is that, as the engine rounded the curve, the apron was pressed up with a jerk, and he was thereby thrown from his feet and received the injuries for which he asks recovery in this action.

1. Defendant concedes that the inequality between the floor of the

engine and the floor of the tender was 3 inches, or 1½ inches greater than permitted by the Federal statute. This is plainly a concession of negligence, and liability follows if the injury was proximately caused by the inequality. Counsel for defendant base their claim of no liability largely upon the allegations of the complaint that the apron was likely to be suddenly pressed upward when the engine was running on a curved track, that it was running on a curved track at the time plaintiff was hurt, and that the apron was so suddenly pressed upward, causing plaintiff to be thrown against the tender, etc. They insist that the evidence is conclusive that the curve in the track at this point was so slight that it would not create the danger of the apron being suddenly pressed forward. It is true that the complaint charged that the accident happened when the engine was running on a curved track by the apron being suddenly pressed up. Assuming that it was obligatory for plaintiff to show that the accident did happen in exactly the way charged in the complaint, it seems to us that he did so. Plaintiff testified that the engine was rounding a curve, that the beam upon which the apron rested went up with a jerk, causing him to be thrown. This evidence was not contradicted save insofar as the physical facts tend to make it improbable. While it is true that the evidence showed a 6 per cent curve and that plaintiff's expert designated such a curve as a slight one, we still have the admitted inequality between the floors of the engine and tender, in violation of the statute, and the positive evidence that the apron upon which plaintiff was compelled to stand was suddenly pressed up, causing the accident. The extent of the curve in the track, whether it was properly called a slight curve, or a sharp one, is not very material so long as it was enough to cause the apron to come up. The evidence was sufficient, in our opinion, to warrant the jury in finding that the accident happened substantially as claimed by plaintiff, and, this being so, it requires no discussion to show that defendant's negligence was the proximate cause.

2. The immediate injury was a badly sprained and dislocated wrist. Plaintiff was attended by a physician and surgeon in defendant's employ, who set the hand, put it in straps, attended to it and treated it every day for a period of 6 weeks from the day following the accident. Plaintiff then resumed his work, though he claims that his wrist was

inflamed and that he suffered pain from it during all the time he continued to work. He gave up his train in November, claiming that the condition of his wrist compelled him to do so. He then consulted the company surgeon again, who, on December 21, operated by making an incision in the hand near the wrist. The cut was sewed up and plaintiff went home from the hospital. The condition grew worse, the swelling and pain increasing, and when the doctor removed the stitches pus was discovered. After some 10 days' treatment at plaintiff's home he was again taken to the hospital and a second operation performed. Ultimately the wounds healed, but plaintiff suffered from blood poisoning on his arm, and has ankylosis of the wrist bones which renders the wrist and hand practically useless. This is a permanent condition. Defendant contends that the evidence does not sustain plaintiff's claim of causal connection between his present disability and the injury to the wrist received in the accident. The expert evidence was sharply conflicting on this point, but there was plainly enough in plaintiff's favor to prevent our interference with the answer of the jury.

3. Plaintiff's disability is serious, permanent and clearly justifies substantial damages. The verdict as rendered was too large, and the trial court reduced it. It seems to us that there should be a further reduction.

4. We have not overlooked the assignments of error in sustaining objections to two questions asked of plaintiff's experts on cross-examination. We do not say that the court might not properly have ruled otherwise, but we are satisfied that there was no reversible error in the rulings made.

The order appealed from is affirmed on condition that plaintiff, within 10 days after the remittitur goes down, file in the court below his consent to a reduction of the verdict to $10,000. Should plaintiff not so consent, a new trial is granted.