## ALBERT COX v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

December 30, 1927.

No. 26,311.

**New trial granted where evidence as to flat feet did not warrant verdict of $15,000.**

A new trial granted as to the issue of damages only, in a personal injury action, the evidence as to the permanent disability being so unsatisfactory that a verdict for $15,000 is excessive.

Damages, 17 C. J. p. 1042 n. 28.

---

See L. R. A. 1915F, 221.

---

Defendant appealed from an order of the district court for Dakota county, Albert Johnson, J. denying its motion for a new trial. New trial granted as to amount of damages only.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellant.

*Tautges, Wilder & McDonald,* for respondent.

WILSON, C. J.

Appeal from an order denying defendant's motion for a new trial. The only question presented is the amount of the verdict of $15,000.

[1]Reported in 217 N. W. 128.

Plaintiff, a normal man, was one of defendant's switchmen at St. Joseph, Missouri, where he lived. On June 14, 1926, he climbed up the side of a slowly moving box-car. The grabiron on top of the car gave way and he fell about eight feet to the ground. He landed on his feet and fell backward striking his head. He was unable to get up. He suffered severe pain in his feet and back followed by a severe headache. An ambulance took him to a hospital, where he remained in bed four days. While there his pains continued, requiring five hypodermic injections in the arm. He was then taken to his home, where he remained ten days, and there the doctor continued to call on him. He was then moved by train to Minneapolis, where he entered Asbury Hospital. A few days later he was moved to a private home, where he remained until the trial on November 29, 1926.

For ten days after entering the private home he was in bed. For two months thereafter he made use of a wheel chair. Then he was on crutches until early in November, when he used a cane as he did at the time of trial. In his home hot water bags and chloroform liniment were applied to his feet and back and an ice bag to his head and headache pills were taken. After coming to Minneapolis he had fewer headaches but they occurred two or three times a week. His back and feet pained him. Shortly before trial his left hand and arm became numb. His trouble in urinating subsided. He was nervous. He walks abnormally. His feet were swollen and there was some swelling on the left side of the back just above the hip. The X-rays of the feet were negative, but the record is silent as to whether the X-ray is a reliable test as to the presence of flat feet. Plaintiff's attending physician gives the opinion that plaintiff suffered a severe sprain of the muscles and ligaments of the lower back, a sprain of the arch of the feet, and a probable concussion either to the head or spine, or both of them, sufficient to give him headaches. The evidence does not show any permanent injuries other than flat feet.

The doctor testified: That the condition of the feet is permanent, they do not correct, and generally continue gradually to get worse. Flat feet cause a disability in the fact that the walk, with each

step trying to swing as much weight off the feet as possible because of the pain, becomes a short or shuffle step. The normal arch is supposed to allow a person to take a good normal step forward, and in order to get the spring of the step a person goes forward on his toes and comes back on his heels—the arch being the spring of the foot that allows this. Presence of pain and absence of spring result in the shuffle step. The doctor says he does not know whether this condition of plaintiff's feet will prevent him from doing hard manual labor or work such as that of a railroad switchman or brakeman. Flat feet are classed as first, second and third degree. This man's feet are classed as first degree plus, i. e. just short of the second degree. He also stated that a man with flat feet is not as nimble as a man with normal feet, but that negroes normally have third degree flat feet. Flat feet such as plaintiff's may be painful for years—not to the degree that they are now. After 6 to 18 months some of the pain eases off. This is traumatic flat foot and the tendency is for the severe pain to subside in a month's or a year's time; some of it remains possibly. Flat feet are permanent but some of the pain will leave. They are uncomfortable to say the least. Plaintiff's doctor testified: "It showed that the normal arch that is formed by the toes in the front of the foot was let down and the small bones in the back part of the foot are misplaced inward." No claim is made that plaintiff could not do many kinds of work, and it is possible that he may do his usual railroad work; and he may do this even though he may be uncomfortable from flat feet.

There can be no doubt that plaintiff was injured. There is much doubt as to the character of its permanency. The pains suffered more recently have depended upon subjective symptoms only. The flat feet however give a substantial basis or foundation for the claim of pain in the feet. The case as a whole cannot be said to rest upon subjective symptoms only, but the evidence as to the presence of flat feet and the permanent disability and pain therefrom is unsatisfactory. See Gillespie v. G. N. Ry. Co. 63 Mont. 598, 208 P. 1059. More time has now elapsed since the trial, and it is highly probable that justice would more surely prevail if the question of damages should be submitted to another jury. Less harm will re-

sult therefrom than to sustain upon this record the large verdict which is apparently the result of prejudice and not the product of substantial evidence.

In so far as liability is concerned the order is affirmed, but as to the issue of the amount of damages only a new trial is granted.

Reversed.